(No. 12441.—Decree affirmed.)

LUCILLE MOORE, Appellant, *vs.* JOHN LINN, Appellee.

*Opinion filed February 20, 1919.*

1. MORTGAGES—*a party served with process and defaulted is bound by decree of foreclosure.* A party who is personally served with process in a foreclosure suit and defaulted is bound by the decree of foreclosure although she had conveyed the property to the mortgagor under an agreement that he would re-convey to her, and while the fact that he mortgaged the property to secure a *bona fide* indebtedness and misled her in not asserting her rights may entitle her to relief as against the mortgagor, she cannot enforce her rights as against the property after it has been redeemed by a *bona fide* creditor of the mortgagor.

2. SAME—*bona fide creditor redeeming from foreclosure sale is entitled to property.* Where a grantee has mortgaged property to secure a *bona fide* indebtedness, a *bona fide* creditor redeeming from the foreclosure sale is entitled to the property although the grantee was ·bound by contract to re-convey the premises to his grantor, where the creditor was not a party to such contract and had no knowledge of it.

APPEAL from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

JOHN B. KING, for appellant.

DAILEY, MILLER, McCORMICK & RADLEY, and McROBERTS & MORGAN, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Lucille Moore, appellant, filed her bill in the circuit court of Peoria county seeking to enjoin the enforcement of a forcible entry and detainer judgment entered by the county court of said county. The bill recited that complainant became the owner of certain premises in Peoria in 1900, paying therefor $300 in cash and agreeing to pay $3200 more in deferred payments; that soon after the purchase she conveyed the premises to Abraham Jacobson, a lawyer of Peoria, having an agreement with him by which he was

to pay off the $3200 owing on the premises and complainant was to make payments to him from time to time until she should pay him the $3200 and interest thereon, at which time he was then to re-convey the property to her. The bill alleges that without complainant's knowledge Jacobson borrowed $2500 of Fannie Feinburg, giving her a mortgage on the property to secure the same; that Jacobson conveyed the property to his mother, Rachael Jacobson, without consideration, and that later, Jacobson becoming indebted to Robert Krieger, Rachael Jacobson conveyed the property to Krieger, and that all such transfers were made without the complainant's knowledge; that the Feinburg mortgage becoming due a foreclosure suit was begun, and Krieger, Rachael Jacobson, Abraham Jacobson and the complainant were made parties defendant. The bill alleges that complainant was served with process; that she called on Jacobson, her attorney, who informed her there was nothing for her to do and that he would look after the matter for her; that a decree of foreclosure was entered, and at the sale had thereunder Fannie Feinburg became the purchaser and a certificate of purchase issued to her. The bill alleges that after the time for redemption by Krieger, the supposed owner of the equity of redemption, had expired, and to whom Jacobson owed about $3000, Krieger gave Jacobson his judgment note for $25 without consideration; that Jacobson assigned the note without consideration to John Linn, and that by an agreement and understanding had between Jacobson, Krieger and Linn the latter took judgment on said $25 note August 4, 1916, the last day for creditors of Krieger to redeem, and that Linn did redeem the property, paying off the Feinburg mortgage and also paying Krieger some $2800 which Jacobson owed him. The bill alleges that all these proceedings and transactions were had to deprive the complainant of her rights in the premises. The bill alleges that complainant had paid Jacobson, under her agreement with him, in all about $4220, and that she

quit making payments to him in 1914, when she first discovered he had mortgaged the premises to Fannie Feinburg. The bill alleges that on August 4, 1916, Krieger conveyed by quit-claim deed to Linn all his right, title and interest in the premises. The bill further alleges that prior to August, 1916, Krieger brought a forcible entry and detainer suit against complainant before a justice of the peace, in which proceeding he was unsuccessful, and that on an appeal taken by him to the circuit court he was again unsuccessful. The bill further alleges that after Linn became the purchaser of the property he sought by a forcible entry and detainer suit in the county court of Peoria county to oust complainant of possession. The bill alleges the facts therein set out are not a defense to the forcible entry and detainer suit and can only be availed of in a court of equity, and asks that Linn be enjoined from further prosecuting the forcible entry and detainer suit and from interfering with complainant's possession of the premises. The prayer of the bill was amended, asking that the title to the premises be decreed to be in complainant free of any right, title, interest or claim of possession by Linn. The bill prayed that a temporary injunction issue pending the further order of the court, and such temporary injunction was allowed and issued, enjoining the further prosecution of the forcible entry and detainer suit.

Appellee, John Linn, filed an answer, admitting complainant to be in possession of the premises and admitting her relations with Jacobson, but denied complainant was the owner of the premises, denied that he conspired with Jacobson and Krieger to defraud complainant and denied the $25 note he purchased from Jacobson was without consideration. Defendant admitted the conveyance from Krieger to himself, but denied there was any collusion between him, Krieger and Jacobson to defraud complainant. Defendant admitted the unsuccessful forcible entry and detainer suits brought by Krieger against the complainant but

averred he was an entire stranger to such proceedings. The answer admitted the defendant had brought an action in forcible entry and detainer against complainant, but denied complainant was entitled to the relief prayed for in her bill.

Defendant filed a cross-bill, setting up, in substance, the matters alleged in his answer, and further alleging that he was a purchaser in good faith at the sheriff's sale of the premises described in complainant's bill, and alleging complainant withheld possession of the same from him without right, and prayed for relief and possession of said premises. Complainant answered the cross-bill, denying its allegations. Replications were filed and the cause was referred to the master to take proofs and report the same, together with his conclusions thereon.

The master found complainant purchased the property in 1900, paying $300 in cash and procured Jacobson to pay off the balance; that she deeded the property to Jacobson under an agreement that upon her paying him the balance advanced, with interest thereon, he would re-convey the property to her; that she had from time to time made payments to Jacobson under the contract, amounting in all to between $2300 and $2500, there still being a large sum of money due Jacobson from the complainant; that Jacobson borrowed $2000 from Fannie Feinburg, giving a mortgage on said premises; that he afterwards conveyed the property to his mother and she to Robert Krieger; that the mortgage was foreclosed in 1915, Krieger, Jacobson and complainant being made parties defendant and personally served, and that complainant made no appearance and judgment was entered against her by default; that complainant had no valid defense to said suit and that it did not appear that there was any collusion between Fannie Feinburg and Jacobson in the foreclosure proceedings. The master reported the decree in the foreclosure suit found the amount due, and further found the interests of Krieger and complainant were subject to the mortgage lien, and that

the decree was binding on complainant. The master reported further that the note for $25 given by Krieger to Jacobson and by him assigned to Linn, who took judgment thereon and redeemed from the Feinburg foreclosure, was given through an understanding and agreement had between Krieger, Jacobson and Linn for the purpose of making redemption from the Feinburg mortgage, and that the proceedings were in due form of law and vested title in Linn free and clear of all interest of complainant. The master further found that under the deed from Krieger to Linn the latter became seized and possessed of the real estate, subject only to the certificate of purchase then held by Fannie Feinburg, and that if Linn became seized of the premises under the Krieger deed, subject to the rights of complainant under her agreement with Jacobson, she could only assert such rights by first offering to pay Linn the amount equitably due from her under the Jacobson contract, and that complainant should not be permitted to assert any rights without first offering to pay such amounts equitably due Jacobson, which she had failed to do. The master further found and reported that Linn had secured a judgment in forcible entry and detainer against complainant, which judgment, although enjoined, was in full force and effect, and found the original bill to be without equity and recommended the bill be dismissed and the injunction dissolved.

Complainant moved, was granted leave to and did further amend her bill asking for an accounting among complainant, Jacobson and Linn to ascertain what, if any, amount of money was due from complainant to either of said parties or from such parties to complainant, and alleging that should the court find complainant indebted to said Linn for any money paid out for complainant in the cause, she was ready, able and willing to pay such amount.

The cause was re-referred to the master, with directions to take further testimony relative to the consideration

of the $25 note given by Krieger to Jacobson and by the latter assigned to Linn, and to hear such further proof as might be offered under the amendment to the bill and report his further conclusions to the court. The master reported the conveyance of the property in question by Rachael Jacobson to Krieger was to secure an indebtedness owing by Abraham Jacobson to Krieger, which indebtedness, at the time Linn redeemed the premises as a creditor of Krieger, amounted to about $2300; that Krieger made and executed the $25 judgment note to Jacobson upon and because of the promise of Jacobson that he would negotiate said note, have judgment taken thereon and the premises in question redeemed and a sale had, by which a sum would be realized sufficient to satisfy and pay off the indebtedness owing by Jacobson to Krieger; that at the time Krieger gave the $25 note to Jacobson he owed him that amount for legal services, and that this was a part of the consideration for the note. The master found that Linn was not a party to the agreement between Krieger and Jacobson by which the note was given to Jacobson; that before Linn purchased the note from Jacobson he inquired and was advised the note was given in payment of a lawful indebtedness and that the note was a binding obligation. The master found Linn had a right to rely upon such information secured from Krieger and Jacobson, and that so relying he purchased the note in good faith, and that it was immaterial in this case whether or not there was any consideration for the note as between Krieger and Jacobson. The master further found Jacobson to be insolvent and now indebted to Linn in the sum of about $600, and that a partial motive for the purchase of the $25 note and redemption of the property in question was to enable Linn to reimburse himself for said amount. The master found complainant's time for redemption had expired at the time of the redemption by Linn, and that complainant had no equitable right to question the sale or redeem the premises

as against Linn nor to demand an accounting from him, and further found the evidence did not sustain the charge that complainant was defrauded.

Objections to the master's report were overruled and heard as exceptions before the chancellor, where the same were overruled and a decree entered substantially as recommended by the master. The decree dissolved the temporary injunction, dismissed the complainant's bill and ordered and decreed that Linn be let into possession of the premises in question, and that complainant, and any person claiming under her, quit and surrender up possession of said premises. An appeal was prayed and allowed to this court, and appellant's contention is that Linn had no right to redeem from the Feinburg mortgage foreclosure because he paid no consideration for the $25 note assigned him by Jacobson, and that he was a volunteer without legal right or interest and not a *bona fide* creditor of Krieger, and that Krieger, Jacobson and Linn practiced fraud and collusion in obtaining the judgment in favor of defendant.

We have set out at considerable length the pleadings and the findings of the master so that the contentions of the parties and the questions involved may be fully understood. It is stipulated that during the pendency of this proceeding the Appellate Court for the Second District has affirmed the judgment of the county court of Peoria county in favor of Linn in the forcible entry and detainer suit brought by him against complainant in this proceeding.

Appellant says in her brief that the whole case turns upon whether there was a *bona fide* indebtedness between Krieger and Jacobson for which the $25 note was given, and whether there was fraud and collusion between Linn, Krieger and Jacobson in obtaining the judgment under which the redemption was had. The master found the proof did not sustain either of these contentions of appellant, and we cannot say the evidence did not justify the master's conclusions.

Complainant clearly had no right to complain of the foreclosure decree in the Feinburg suit, for she was personally served with process, was defaulted, and there is no proof Fannie Feinburg had anything to do with her being defaulted. The Feinburg mortgage appears to have been given to secure a *bona fide* indebtedness. The decree in the foreclosure suit found that was so, and that any interest appellant might have in the property was subject to the lien of the mortgage. Counsel for appellant says her interest was not found and determined by the foreclosure decree and that her rights remain unadjudicated. True, the decree did not attempt to define the nature and character of appellant's interest, if any, in the premises, but it did find that, whatever the nature of any interest she might have, it was subordinate to the mortgage, which was a prior lien on the premises. That decree was binding on appellant, and even if she had equitable rights in the property as against Jacobson they cannot be asserted as against that decree. If appellant was, as she claims, deceived or misled by Jacobson in not asserting any interest she claimed in or against the property in the foreclosure suit, her remedy, if she has any, would be against Jacobson and not against the property.

The proof does not show that Linn was a party to any conspiracy or knew of any claim of complainant other than the right to possession. Complainant, while claiming to have paid Jacobson $4220.05, introduced receipts amounting to between $2300 and $2500 only. She moved into the premises in 1900 and does not claim to have made any payments since 1914. She is still in possession. If $2500 is all she has paid during the last eighteen years under her contract with Jacobson, such amount is but about four per cent interest on the $3200 advanced by Jacobson in 1900. Though appellant be willing, ready and able to pay Jacobson whatever sum may still be owing him under the original contract, Linn was not a party to such contract, so far

as the proof shows had no knowledge of it and is not bound by it. He secured title to the property in regular form and manner and in good faith and is entitled to the property and the possession thereof.

The decree of the circuit court is affirmed.

*Decree affirmed.*

---

(No. 12189.—Reversed and remanded.)
HARRY DOWDEY *et al.* Appellees, *vs.* HELEN PALMER *et al.* Appellants.

*Opinion filed February 20, 1919.*

1. WILLS—*when financial condition of testator's children is not admissible.* In a proceeding to contest a will by which the testator has practically disinherited his children, evidence of the financial condition of the children is not admissible, where there is no proof that the testator knew of their condition.

2. SAME—*capacity to transact business is not the true test of capacity to make will.* The capacity to transact ordinary business is not the true test in determining whether the testator had sufficient mental capacity to make a will.

3. SAME—*true test of mental capacity to make a will.* The true test of mental capacity to make a will is whether the testator, at the time the will was made, had sufficient mind and memory to remember who were the natural objects of his bounty, to recall to mind his property and to make disposition of it understandingly, according to some plan formed in his mind.

4. SAME—*instruction directing a verdict must be supported by evidence.* In a will contest case an instruction directing a verdict for the contestants on the question of testamentary capacity should not be given where it contains hypotheses which are not supported by the evidence in the record.

5. SAME—*instruction directing a verdict should not give undue prominence to certain facts.* An instruction directing a verdict for the contestants should not be given where it singles out particular facts and calls the attention of the jury thereto without referring to other facts just as necessary for the jury to consider in reaching a verdict.